UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ANTWAUN FORD,                              )
                                           )
          Plaintiff,                       )
                                           )
     v.                                    )     No. 4:17 CV 2420 RWS
                                           )
NANCY A. BERRYHILL,                        )
Deputy Commissioner of Operations,         )
Social Security Administration,            )
                                           )
          Defendant.                       )

## MEMORANDUM AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of the Commissioner's decision denying his application for supplemental

security income.[1]  Because the Commissioner's decision is supported by

substantial evidence on the record as a whole, I will affirm the Commissioner's

decision.

### Procedural History

On March 18, 2009, plaintiff filed an application for supplemental security

income pursuant to Title XVI, 42 U.S.C. §§ 1381 *et seq*.  The ALJ determined the

onset date to be March 18, 2009.  Plaintiff alleges disability because of

---

[1] Plaintiff does not appeal the denial of his application for Child's Insurance Benefits.

osteoarthritis of the bilateral knees, obesity, major depressive disorder, and undifferentiated schizophrenia.

His applications were denied on initial consideration. After a hearing, an ALJ denied plaintiff's application on August 23, 2010. (Tr. 9-26). After the Appeals Council denied plaintiff's request for review, plaintiff filed a complaint in this Court. (Tr. 677-82, 684-99). On March 27, 2014, this Court remanded plaintiff's case for further proceedings. (Tr. 684-99)

On remand, a different ALJ held an administrative hearing on August 3, 2016. (Tr. 621-58). The ALJ denied plaintiff's application on March 13, 2017. (Tr. 595-611). The Appeals Council denied review on July 30, 2017. (Tr. 587-91). Thus, plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner.

In this action for judicial review, plaintiff contends that the ALJ erred in his consideration of his residual functional capacity (RFC) and by according improper weight to certain medical evidence in this case. Plaintiff asks that I reverse the Commissioner's final decision and remand the matter for further consideration. For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts set forth in his Statement of Uncontroverted Material

Facts (ECF #26) as they are admitted by the Commissioner (ECF #27). I also

adopt the additional facts set forth in the Commissioner's Statement of Additional

Material Facts (ECF #23-2), as they are unrefuted by plaintiff. Additional specific

facts will be discussed as needed to address the parties' arguments.

## Legal Standards

To be entitled to disability benefits, a claimant must prove that he is unable

to perform any substantial gainful activity due to a medically-determinable

physical or mental impairment that would either result in death or which has lasted

or could be expected to last for at least twelve continuous months. 42 U.S.C. §§

423(a)(1)(D), (d)(1)(a). To determine whether claimants are disabled, the

Commissioner evaluates their claims through five sequential steps. 20. C.F.R. §

404.1520; *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (describing the

five-step process).

Steps one through three require that the claimant prove (1) he is not

currently engaged in substantial gainful activity, (2) he suffers from a severe

impairment, and (3) his disability meets or equals a listed impairment. 20 C.F.R. §

404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or

its equivalent, the Commissioner's analysis proceeds to steps four and five. Step

four requires the Commissioner to consider whether the claimant retains the RFC

to perform his past relevant work (PRW). *Id.* at § 404.1520(a)(4)(iv). The

claimant bears the burden of demonstrating he is no longer able to return to his PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at step five to show the claimant retains the residual functioning capacity (RFC) to perform other jobs that exist in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ is required to evaluate the credibility of a claimant's testimony, including the claimant's subjective complaints of pain. *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001). In so doing, the ALJ is not permitted to ignore the claimant's testimony even if it is inconsistent with objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). After considering the claimant's testimony, the ALJ may disbelieve it if it is inconsistent with the record as a whole. *Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). To properly evaluate the claimant's subjective complaints, the ALJ must consider the factors enumerated in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

*Id.* at 1322. While the ALJ must consider the *Polaski* factors, he need not enumerate them specifically. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). When the ALJ explicitly disbelieves the claimant's testimony and gives good reasons for such disbelief, a reviewing court will typically defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility to develop the record fully and fairly in the course of the non-adversarial administrative hearing. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

In reviewing the ALJ's denial of Social Security disability benefits, my role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires*, 564 F.3d at 942. "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, I must consider evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, I may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because I would have decided the case differently. *See Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). I must "defer heavily to the findings and conclusions of the Social Security

Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (internal citation omitted).

## ALJ's Decision

The ALJ determined that plaintiff had not engaged in substantial gainful activity since his application date of March 18, 2009. (Tr. 598). He found that plaintiff suffered from the following severe impairments: mild osteoarthritis of the bilateral knees; obesity; major depressive disorder; and, undifferentiated schizophrenia (Tr. 599). The ALJ found that this combination of severe impairments did not equate to one of the listings denominated in 20 CFR 404, Subpt. P, App. 1. (Tr. 599-602).

The ALJ determined that plaintiff retained the residual functional capacity (RFC) to perform sedentary, simple, repetitive work that did not require close interaction with the public or with coworkers. (Tr. 602).

Based on this RFC determination, the ALJ found that plaintiff was unable to perform any past work and did not possess any transferable skills. (Tr. 610). The ALJ consulted a vocational expert (VE) to assess whether jobs within plaintiff's RFC existed in significant numbers in the national economy. (Tr. 610). The VE identified the jobs of hand packer, and worker/assembler as jobs within plaintiff's RFC. (Tr. 610). The ALJ therefore determined that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 611).

**Discussion**

A.  <u>RFC Determination</u>

Here, plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence on the record as a whole.  With respect to his mental limitations, he argues that the ALJ improperly considered some evidence, ignored other relevant evidence and improperly formulated the hypothetical posed to the VE.

RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations."  20 C.F.R. § 404.1545(a).  The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).  The record must include some medical evidence that supports the RFC.  *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (internal citation omitted).  However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Plaintiff essentially argues that I should reweigh the evidence of his mental limitations considered by the ALJ in his determination of plaintiff's RFC.  That is not my role.  *Hensley*, 829 F.3d at 934.  As discussed below, the ALJ properly

factored into his RFC determination an assessment of plaintiff's credibility and objective medical findings of record, which do not support plaintiff's claimed mental limitations. In so doing, he did not substantially err.

There is substantial evidence on the record as a whole to support the ALJ's conclusion that plaintiff was not as limited as he alleged. At his consultative examination with Summer Johnson, Psy.D., on July 15, 2009, plaintiff displayed adequate hygiene and grooming, normal motor activity, adequate eye contact, and normal posture and gait. (Tr. 431-34). Plaintiff reported no prescribed psychotropic medications. He engaged spontaneously with Dr. Johnson and was coherent, relevant, logical, and cooperative. Plaintiff was oriented to person, place, and situation, although not to time. Although his mood and affect were depressed and flat, his judgment, concentration, persistence, and pace were fair. Plaintiff was observed to have more physical capabilities than he indicated. His receptive and expressive language skills were intact, and there was no evidence of tangents, flights of ideas, or perseveration. Although Dr. Johnson found evidence of both thought and mood disturbance, she assessed his prognosis as good with appropriate intervention and assigned him a GAF score of 50, which indicates symptoms bordering between moderate and serious. *See Pates-Fire*, 564 F.3d at 937-38.

Plaintiff was treated by psychiatrist Vadim Baram, M.D. Dr. Baram saw plaintiff in 2010 during a four day in-patient psychiatric stay at St. Mary's Health

Center.  At the time of admission to St. Mary's, plaintiff denied any diagnosed mental illness and took no psychotropic medications.  Although his GAF was assessed at 20 upon admission, plaintiff's GAF score was 52 upon his discharge after just four days of medication and other therapies, and he was alert and oriented with a calm and pleasant affect, linear and logical thought processes, and an okay mood.  (Tr. 585).  Dr. Baram prescribed psychotropic medications and an immediate follow-up visit for plaintiff when he was discharged, noting that his prognosis depended in part upon medication and psychotherapy.  (Tr. 585).  Despite his discharge plan, plaintiff did not refill his medications or see Dr. Baram (or any other psychiatrist) again until May of 2014.  At that visit, Dr. Baram observed that plaintiff was pleasant, cooperative, and withdrawn, with a logical flow of thought, fair insight and judgment, and blunted affect.  (Tr. 1207).  He prescribed Latuda and a follow-up visit in one month.

At plaintiff's next visit on August 27, 2014, Dr. Baram noted that plaintiff was non-compliant with his medication.  His assessment was that plaintiff was doing fair.  Dr. Baram counseled plaintiff on medication use and education and refilled his prescription for Latuda.  He prescribed a follow-up visit in a month, but plaintiff was not treated by Dr. Baram again.

Prescription records from 2014 through the end of 2016 indicate that plaintiff only began filling a 30-day prescription for Latuda in September of 2016,

when it was prescribed by his primary care physician David Mosley, M.D. (Tr. 807-16).

Plaintiff's primary care physician, Gayla Jackson, M.D., treated plaintiff regularly beginning in 2013 and consistently observed him to have a normal mood, affect, and behavior. (Tr. 823, 833, 840, 847, 872, 885, 895, 914, 951, 989, 1018, 1092).

Plaintiff's numerous normal examinations, despite his complaints of disabling limitations, were properly considered by the ALJ as one factor when formulating his RFC. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints of pain). The ALJ also properly considered that plaintiff's symptoms responded to medication and psychotherapy treatment. Impairments which can be controlled by medication or treatment are not considered disabling. *See Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009). The ALJ also properly considered the fact that plaintiff did not seek or require aggressive treatment for his mental impairments. *See Clevenger v. Social Security Administration*, 567 F.3d 971, 976 (8th Cir. 2009). During the eight years his disability application was pending, plaintiff only sought treatment from a mental health professional for four days in 2010 and two appointments in 2014. Plaintiff waited another two years before he filled a prescription for psychotropic medication. *See Page v. Astrue*,

484 F.3d 1040, 1044 (8th Cir. 2007) (affirming ALJ's determination that mental health issues were not severe where claimant sought very limited treatment). The ALJ also properly considered plaintiff's non-compliance with treatment recommendations, including the failure to take psychotropic medication and seek psychotherapy. *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006).

When assessing a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Instead, the ALJ must determine a claimant's RFC based on his review of the record as a whole. Here, the ALJ evaluated all of the medical evidence of record and adequately explained his reasons for the weight given this evidence.

Moreover, the ALJ did not simply adopt a sedentary work RFC wholesale. To account for plaintiff's credible mental limitations, he limited plaintiff to simple, repetitive work that did not require close interaction with the public or coworkers. For the reasons set out above, substantial evidence on the record as whole supports the ALJ's evaluation of the medical evidence when formulating plaintiff's RFC.

The ALJ also properly considered plaintiff's daily activities and assessed plaintiff's RFC consistent with his credible limitations. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall,* 274 F.3d at 1218. I must defer to the ALJ's credibility determinations

"so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.  *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322.  While an ALJ need not explicitly discuss each *Polaski* factor in his decision, he nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints.  *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).  "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the Polaski standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible."  *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004).  It is not enough that the record merely contain inconsistencies.  Instead, the ALJ must specifically demonstrate in his decision that he considered all of the evidence.  *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  Where an ALJ explicitly considers the *Polaski* factors but then discredits a

claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ properly evaluated plaintiff's credibility based upon his own testimony, third-party statements and testimony, the objective medical evidence of record, his daily activities, and the conservative nature of his treatment. The ALJ summarized plaintiff's testimony regarding his daily activities and subjective allegations of pain. The ALJ was not required to fully credit all of plaintiff's assertions regarding his limitations given his activities, which included driving, playing basketball, and visiting family. *See Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996); *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2010) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("Acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.").

Even if the ALJ could have drawn a different conclusion about plaintiff's credibility after reviewing his daily activities, I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary determination. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Here, the ALJ discounted plaintiff's subjective complaints only after evaluating the

entirety of the record. In so doing, he did not substantially err, as subjective complaints may be discounted if inconsistencies exist in the evidence as a whole. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994). Where, as here, an ALJ seriously considers but for good reasons explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).

Substantial evidence in the record as a whole supports the ALJ's RFC determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

Here, the ALJ formulated plaintiff's RFC only after evaluating his credibility and discussing the relevant evidence, including testimony, the medical evidence, and his daily activities. After consideration of all this evidence, the ALJ concluded that plaintiff retained the capacity to perform sedentary work, with modifications tailored to his credible limitations. In so doing, he did not substantially err. The ALJ's RFC assessment takes into account plaintiff's credible mental limitations of record and is supported by substantial evidence on the record as a whole.

B.    <u>Weight Accorded to Opinion Evidence</u>

When evaluating opinion evidence, an ALJ is required to explain in his

decision the weight given to any opinions from treating sources, non-treating

sources, and non-examining sources. *See* 20 C.F.R. § 404.1527(e)(2)(ii). The

Regulations require that more weight be given to the opinions of treating

physicians than other sources. 20 C.F.R. § 404.1527(c)(2). A treating physician's

assessment of the nature and severity of a claimant's impairments should be given

controlling weight if the opinion is well supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with other substantial

evidence in the record. *Id.; see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th

Cir. 2004). This is so because a treating physician has the best opportunity to

observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most
> able to provide a detailed, longitudinal picture of [a claimant's]
> medical impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the objective medical
> findings alone or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).

When a treating physician's opinion is not given controlling weight, the

Commissioner must look to various factors in determining what weight to accord

that and any other medical opinion of record, including the length of the treatment

relationship and the frequency of examination, the nature and extent of the

treatment relationship, whether the physician provides support for her findings,

whether other evidence in the record is consistent with the physician's findings,

and the physician's area of specialty. 20 C.F.R. § 404.1527(c), (e). Inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a treating physician's opinion. *Goff*, 421 F.3d at 790-91. The Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

Plaintiff contends that the ALJ improperly weighed the opinions of his examining physicians. Plaintiff argues that the ALJ should have given more weight to the opinions of consultative psychologists (Dr. Johnson and Paul W. Rexcoat, Ph.D.) and his psychiatrist, Dr. Baram. For the reasons that follow, the ALJ did not substantially err.

Here, the ALJ gave limited weight to the 2009 opinion of consulting psychologist Dr. Johnson as inconsistent with the substantial medical evidence of record and her own treatment notes made during the examination. Moreover, it was based primarily on a recitation of plaintiff's self-reported symptoms and subjective allegations. Finally, Dr. Johnson's assessment that plaintiff's symptoms bordered on moderate to severe does not support plaintiff's claimed limitations, as Dr. Johnson believed that plaintiff's prognosis was good with appropriate intervention. Because the ALJ's reasons for discounting Dr. Johnson's opinion are supported by substantial evidence on the record as a whole, I defer to that

determination.

The ALJ also assigned little weight to the opinions of Dr. Baram. Dr. Baram completed two mental RFC questionnaires in connection with plaintiff's application for benefits. The first one was dated June 3, 2014. At that time, Dr. Baram had treated plaintiff for four days in 2010 and once in 2014. Dr. Baram indicated that plaintiff had undifferentiated schizophrenia, poor coping skills, and a GAF of 35. He stated that plaintiff had difficulty controlling his temper and endorsed auditory hallucinations. His prognosis was questionable. Dr. Baram indicated that plaintiff would be unable to meet competitive standards in any of the abilities and aptitudes needed to perform unskilled work, claiming that plaintiff's perceptional disturbances made his actions unpredictable and that his disorder might interfere with his ability to complete tasks. Dr. Baram predicted that plaintiff would miss work more than four days a month due to his impairments, and that his limitations began in August of 2010. (Tr. 817-21). Dr. Baram completed a second mental RFC questionnaire in July of 2016. He indicated that he had only seen plaintiff once more in the intervening two-year period. Dr. Baram's assessment of plaintiff's work-related limitations remained unchanged. (Tr. 1199-1203).

In discounting the opinions of Dr. Baram, the ALJ noted that they lacked supporting treatment history and records and were inconsistent with the other,

substantial medical evidence of record which showed few mental limitations during the same time period. The ALJ also discounted Dr. Baram's low GAF assessment and guarded prognosis as plaintiff was non-compliant with his medications and had not taken his prescribed Latuda as recommended by Dr. Baram. Substantial evidence on the record as a whole supports the ALJ's conclusion that plaintiff's limitations were not as severe as opined by Dr. Baram in his psychiatric assessment, especially given plaintiff's overall lack of mental health treatment, his short treatment relationship with Dr. Baram, and the length of time between visits. The ALJ therefore did not err when he discounted Dr. Baram's opinions as inconsistent with other substantial evidence of record. *See*, *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (opinions of treating physicians may be given limited weight if they are inconsistent with the record) (citing *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)); *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (ALJ gave little weight to treating physician's opinion that was inconsistent with treatment records and objective medical evidence, and not supported by physician's own exams and test results).

The ALJ also considered the assessment made by consulting psychologist Dr. Rexcoat in September of 2016. Dr. Rexcoat believed plaintiff faked a poor performance on the cognitive functioning exam. He assessed plaintiff with moderate limitations in his ability to understand and remember simple instructions

and moderate limitations in his ability to interact socially. Dr. Rexcoat described moderate limitations in plaintiff's activities of daily living, and serious limitations with memory functioning and in his ability to sustain concentration, persistence, and pace with simple tasks. Dr. Rexcoat's prognosis was guarded. (Tr. 1226-32). In evaluating this opinion, the ALJ discounted the severity of the findings because the examination took place before plaintiff began regular use of his psychotropic medication Latuda and were inconsistent with the other, substantial objective medical evidence of record. Dr. Rexcoat's findings were discounted because they were based primarily on a recitation of plaintiff's self-reported symptoms and subjective allegations. Given that Dr. Rexcoat indicated in his opinion that plaintiff faked the severity of his symptoms during his examination, the ALJ did not substantially err in discounting Dr. Rexcoat's opinion when fashioning plaintiff's RFC.

Here, the ALJ fashioned an RFC to account for plaintiff's credible mental limitations by limiting him to simple, repetitive work requiring limited social interaction. These limitations are not inconsistent with the limitations expressed by plaintiff's treating and examining physicians. When assessing a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Instead, the ALJ must determine a

claimant's RFC based on his review of the record as a whole. The ALJ evaluated all of the medical evidence of record and adequately explained his reasons for the weight given this evidence. For the reasons set out above, substantial evidence on the record as whole supports the weight accorded by the ALJ to the medical opinion evidence in this case.

## C.     Hypothetical Posed to VE

Finally, plaintiff argues that the RFC determination is not supported by substantial evidence on the record as a whole because the hypothetical posed by the ALJ did not "capture the concrete consequences of his impairments." Here, the ALD did not err because the hypothetical posed to the VE properly included the work-related limitations the ALJ found credible. The VE testified that someone with plaintiff's age, education, work experience and RFC could perform the jobs of hand packer and production worker/assembler. Because substantial evidence on the whole supports the ALJ's RFC assessment, he was not required to include additional limitations in the hypothetical posed to the VE. *See Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004). Accordingly, I will affirm the decision of the Commissioner.

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the

record as a whole.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).  "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion."  *Id.*  Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed.  *Davis,* 239 F.3d at 966.  I may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.  I will therefore affirm the decision of the Commissioner as within a "reasonable zone of choice."  *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and plaintiff's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 18th day of July, 2018.